Opinion by Judge BURNS: Concurrence by Judge CALLAHAN.
BURNS, District Judge:
John Schmidt appeals the district court’s grant of summary judgment in favor of Defendant Burlington Northern and Santa Fe Railway Company (BNSF) on his negligent injury claim under the Federal Employers Liability Act (FELA), 45 U.S.C. §§51 et seq. The district court found Schmidt did not present adequate evidence to show he was employed by BNSF. We *688 disagree, and conclude Schmidt’s evidence raises a triable issue of fact as to whether BNSF was his employer.
Background
BNSF is a major railway company and is engaged in interstate commerce. Schmidt was originally hired in 1975 by Western Fruit Express (WFE), a wholly-owned subsidiary of BNSF. WFE does not transport passengers or goods but provides, maintains, and repairs refrigerated cars and trailers for use by BNSF and other railroad lines. WFE and BNSF maintain joint facilities at Hillyard, in Spokane, Washington.
Schmidt was employed by either BNSF or WFE or both intermittently from 1975 through 1999, when he was furloughed. He was recalled to work in 2003, but BNSF’s medical officer determined he was not fit to return to duty because a medical exam uncovered he had suffered a severe neck injury. Schmidt maintains his neck injury resulted from welding assignments he performed from 1992 through 1999 in the car shop in Spokane, and blames the injury on his supervisors’ negligence. According to Schmidt, he worked almost continuously on projects that required hours of welding underneath railroad cars while wearing a welding hood and hard hat.
Schmidt offered the following evidence[1] in support of his contention that BNSF, and not WFE, was his employer during the relevant time period:
• Schmidt applied in 1975 at a Burlington Northern office to work for Burlington Northern.
• The official who first hired him in 1975 told him he was a Burlington Northern employee.
• Some of Schmidt’s coworkers in the welding shop thought they worked for BNSF.
• Signage on the premises and railroad cars named BNSF, or both BNSF and WFE.
• There were two railroad car shops on the premises where Schmidt worked, one marked with a sign bearing BNSF’s name only and the other bearing BNSF’s and WFE’s names; he worked in the latter.
• Workers’ and supervisors’ hard hats had BNSF logos.
• Correspondence from BNSF addressed Schmidt as “employee” or by a work title indicating he worked for BNSF.
• BNSF provided Schmidt and other workers with gloves and gave them vouchers for boots.
• Schmidt was given a summary plan description for the BNSF Retirement Plan.
• BNSF handled Schmidt’s payroll, and its name was on his pay stubs. Some of his pay statements mentioned that BNSF was paying him on behalf of WFE.
• BNSF required and provided or sponsored training in job skills, safety, and avoiding discrimination and harassment.
• Workers from the BNSF main shop attended weekly and monthly safety meetings attended by workers in Schmidt’s shop.
• Schmidt’s injuries can be traced at least in part to welding work he did on railroad cars for BNSF.
• When Schmidt was welding BNSF’s cars, he was required by BNSF policy to wear a hard hat and welding hood.
*689 • BNSF internal publications on the subject of safety records mentioned WFE workers as part of the BNSF workforce.
• The 2003 letter recalling Schmidt to work came from BNSF’s senior manager for “Mechanical/TCU General Timekeeping and Analysis.”
• When Schmidt was recalled, he was told to report to BNSF’s mechanical department.
• BNSF acknowledged Schmidt’s request to exercise his “seniority in the Mechanical Department of the Burlington Northern Santa Fe Railway.”
• Schmidt was screened to return to work by BNSF’s medical officer and BNSF paid for the medical exam.
FELA authorizes employees of railroads engaged in interstate commerce to sue their employers for negligent injury in the course of employment. 45 U.S.C. § 51. It is undisputed BNSF is a railroad within this provision, but WFE is not. If WFE was Schmidt’s sole employer, his remedies would be limited to worker’s compensation. If BNSF was his employer, FELA provides for the recovery of additional damages.
Discussion
Summary judgment should be granted “if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). “[A]ll reasonable inferences are to be drawn in favor of the non-moving party.” Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 630 (9th Cir.2005). The evidence must be enough for a “reasonable trier of fact” to find for the plaintiff. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir.2000). We review the granting of summary judgment de novo. Enlow v. Salem-Keizer Yellow Cab Co., 389 F.3d 802, 811 (9th Cir.2004).
Under FELA, the test of whether a company is the employer of a particular worker turns on the degree of control the company exerts over the physical conduct of the worker in the performance of services. Kelley v. Southern Pac. Co., 419 U.S. 318, 324, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974). Kelley recognizes three different theories of control, derived from common law, by which a plaintiff can establish employment for FELA purposes. “First, the employee could be serving as the borrowed servant of the railroad at the time of his injury.... Second, he could be deemed to be acting for two masters simultaneously.... Finally, he could be a subservant of a company that was in turn a servant of the railroad.” Id. (citations omitted). In proceedings before the district court, Schmidt pursued his claims primarily under the third Kelley theory, the “subservant” theory.[2]
Although he now argues he could have brought his claims under Kelley’s second theory, the “joint employer” theory, he concedes he did not argue this below, and we therefore treat the argument as waived. Brazil v. United States Dep’t of Navy, 66 F.3d 193, 198-99 (9th Cir. 1995).
To prove WFE was BNSF’s servant, Schmidt must establish BNSF controlled or had the right to control the physical conduct of WFE’s employees in the course of the work during which the injury allegedly occurred. Kelley, 419 *690 U.S. at 325, 95 S.Ct. 472. The subservant theory presupposes the existence of two separate entities in a master-servant relationship. A plaintiff can proceed under this theory by showing his employer was the common-law servant of the defendant railroad such that the railroad controlled or had the right to control the employer’s daily operations. Id. A plaintiff must also show he was “employed to perform services in the affairs of [the defendant railroad] and ... with respect to the physical conduct in the performance of the services [was] subject to [that railroad’s] control or right to control.” Id. at 324, 95 S.Ct. 472 (quoting Restatement (Second) of Agency § 220(1)). For Schmidt to succeed under the subservant theory, he must show BNSF controlled or had the right to control his physical conduct on the job. Id. It is not enough for him to merely show WFE was the railroad’s agent, or that he was acting to fulfill the railroad’s obligations; BNSF’s generalized oversight of Schmidt, without physical control or the right to exercise physical control of his daily work is insufficient. Id. at 325-26, 95 S.Ct. 472; Lodge 1858, Am. Fed’n of Gov’t Employees v. Webb, 580 F.2d 496, 504 (D.C.Cir.1978).
The Restatement lists factors relevant to determining whether a master-servant relationship exists. Kelley, 419 U.S. at 335, 95 S.Ct. 472 (Douglas, J., dissenting) (citing Restatement (Second) of Agency § 220, comment c; § 227, comment a; Baker v. Texas & Pac. Ry. Co., 359 U.S. 227, 228, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959)). They include:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
lb) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.
Restatement, § 220(2).[3]
Applying these factors, we conclude Schmidt’s evidence could reasonably support a finding that WFE was BNSF’s servant, and that BNSF had the right to control WFE’s employees, including Schmidt. For example, Schmidt offered evidence that BNSF’s policies regulated how he carried out the welding work which may have caused his injuries, and required Schmidt to participate in its safety and job skills training along with BNSF and WFE employees. In addition, Schmidt’s supervisors wore BNSF logos on their work clothing, suggesting they may have been BNSF’s agents, and indirectly suggesting *691 BNSF controlled how Schmidt did his work. And, it was BNSF’s own medical officer who determined Schmidt was unable to return to work, which could support a finding that BNSF controlled who worked for WFE. Also bolstering the inference of a close link between BNSF and WFE, BNSF actually issued Schmidt’s paychecks. Considered cumulatively, Schmidt’s evidence might persuade a reasonable jury that BNSF had the right to exercise day-to-day control over the jobs of WFE’s employees.
That other WFE employees with similar job responsibilities said they thought they worked for BNSF, though not determinative, is relevant as well. Vanskike v. ACF Indus., Inc., 665 F.2d 188, 199 (8th Cir. 1981) (“The belief of an employee as to who is his employer is a fact to be considered in determining whether a master-servant relationship exists.”) Statements in BNSF’s productivity reports, circulated internally, also suggest that BNSF may have regarded WFE as part of itself and therefore within its control. See Restatement, § 220(2)(i) (listing, as one factor to be considered, the parties’ belief about their relationship). In the same way, statements by BNSF’s management referring to Schmidt as a BNSF employee and treating him as subject to its control tend to show BNSF regarded Schmidt as one of the company’s own employees.
The district court found no evidence BNSF actually controlled WFE’s employees’ daily work, and on that basis granted summary judgment. While we agree the evidence BNSF exercised actual day-today control is scant, the district court did not consider whether BNSF had the right to control Schmidt’s daily work. On this point, we conclude Schmidt presented adequate evidence for a rational jury to find BNSF could control critical aspects of his daily work, including those aspects that may have caused his injury. For this reason, we reverse the district court’s grant of summary judgment and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.

. BNSF submitted contrary evidence to show Schmidt was employed by WFE, but we need not concern ourselves with it since the district court granted summary judgment based on the inadequacy of Schmidt’s evidence that he was a BNSF employee.

. Schmidt also argued he was employed by BNSF exclusively, but the evidence does not support his contention.

. In 2006 the Restatement (Second) of Agency was superseded by the Restatement (Third) of Agency, which uses "employer” and "employee” rather than "master” and "servant,” Restatement (Third) of Agency, § 2.04, comment a, and defines an employee simply as a type of agent subject to a principal's control. Id.., § 7.07(3)(a).