FILED
United States Court of Appeals
Tenth Circuit

October 23, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRIDGET SMITH

       Plaintiff - Appellant,

v.

RAIL LINK, INC.; GENESEE &
WYOMING, INC.,

       Defendants - Appellees.

No. 11-8011

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 2:10-CV-00156-NDF)**

---

Marc Wietzke of The Law Offices of Michael Flynn, PC, Garden City, New York (Jubin
& Zerga, LLC, Cheyenne, Wyoming with him on the brief), for Plaintiff-Appellant.

Melisa G. Thompson of Bates Carey Nicolaides LLP, Chicago, Illinois (Scott L. Carey of
Bates Carey Nicolaides LLP, Chicago, Illinois; Larry B. Kehl and J. James Learned of
Buchhammer & Kehl, Cheyenne, Wyoming, with her on the brief), for Defendants-
Appellees.

Before **MURPHY, HOLLOWAY,** and **GORSUCH,** Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Plaintiff-Appellant Bridget Smith worked for Rail Link, Inc. ("Rail Link") as a freight operator at the Belle Ayre Mine in Wyoming. She was injured on the job, and subsequently sued Rail Link and its corporate parent Genessee & Wyoming, Inc. ("GWI") in federal district court, asserting that the companies were liable for her injuries under the Federal Employers Liability Act ("FELA"). FELA provides, in certain circumstances, a federal cause of action for injured employees of common carriers by railroad.

The Defendants moved for summary judgment, contending that they were not subject to FELA liability for Ms. Smith's injuries because FELA only applies where a defendant is the injured worker's employer and is a common carrier. Rail Link argued it was a not a common carrier, and GWI argued it was neither a common carrier nor Ms. Smith's employer. The district court agreed granted summary judgment for both Defendants. Ms. Smith appeals that ruling. We **AFFIRM**.

## I. Background

### A. *Rail Link's and GWI's operations.*

Rail Link is a railroad switching company *inter alia*. A switching company facilitates the internal movement of railcars within a certain location, such as a coal mine. Rail Link contracts with private businesses to provide on-site operational assistance at industrial facilities. At the Belle Ayre Mine, a coal mine located in the Powder River Basin near Gillette, Wyoming, Rail Link has a contract with Foundation Coal West, Inc. ("Foundation Coal"). Pursuant to that contract, Rail Link handles Foundation Coal's

2

shipments into and out of the Belle Ayre Mine. The shipments are carried on track owned or leased by Foundation Coal, and the equipment used is neither owned nor leased by Rail Link. Under the contract with Foundation Coal, Rail Link's fee depends on the quantity of material it moves within the mine.

In addition to the services provided at the Belle Ayre Mine, Rail Link also provides management and oversight services for railroad terminals. Rail Link's clients include the Corpus Christi Terminal Railroad, the Savannah Port Terminal Railroad, the Golden Isles Terminal Railroad, and the York Railway Company.

Rail Link is also a corporate parent to two short-line railroad companies, which make their rail services available for hire by the public at set tariffs — Commonwealth Railway, Inc. ("Commonwealth") and Talleyrand Terminal Railroad, Inc. ("Talleyrand"). These short-line railroads provide the connection between long haul railroad companies (such as Norfolk Southern and CSX) and railroad terminals, where trains are loaded, unloaded, and redirected to new destinations. Rail Link owns some locomotives but does not own any rail cars or track.

GWI is Rail Link's corporate parent and is a corporate holding company. Its wholly-owned subsidiaries include numerous railroads which, like Commonwealth and Talleyrand, make themselves available for hire by the public for published tariffs. GWI also owns a company called Genessee & Wyoming Rail Services Inc. (GWRSI), which provides administrative and management services to many or all of GWI's corporate subsidiaries, including Rail Link. For example, GWRSI, acting in the name of GWI,

3

manages many of the human resources affairs of Rail Link (as well as other GWI subsidiaries) and promulgates safety regulations that Rail Link's (and other subsidiaries') employees are ultimately expected to follow. GWI, GWRSI, Rail Link, Commonwealth, Talleyrand, and other GWI subsidiaries have substantial overlap amongst their managers and directors. In other words, many managers and directors serve similar roles for multiple companies in the GWI corporate family.

*B. Ms. Smith's lawsuit against Rail Link and GWI.*

Ms. Smith worked for Rail Link as a freight train operator at the Belle Ayre mine. In August 2007, she was injured on the job. She instituted this action against Rail Link and GWI, asserting a cause of action pursuant to FELA, 45 U.S.C. § 51. The essence of her claim is that Rail Link and GWI — both alleged to be common carriers by railroad — simultaneously employed her at the Belle Ayre Mine and acted negligently, resulting in the severe injuries she suffered at the mine.

Rail Link and GWI jointly moved for summary judgment. Rail Link argued that it was not a "common carrier" as a matter of law. GWI argued that it was not Ms. Smith's "employer" as a matter of law.[1] Because each of those statuses is required to maintain a negligence action pursuant to FELA, the Defendants argued that Ms. Smith's suit could not be maintained against either of them. The district court granted their motion for

---

[1] GWI also argued — and continues to argue on appeal — that it was not a "common carrier," but the district court did not address that argument, and we have no need to in light of our affirmance of the district court, which is based on GWI's alternative argument.

4

summary judgment and entered final judgment in their favor. II Appx. 545-557. Ms. Smith appeals that decision.

### *C. FELA background.*

The FELA provides that:

> Every common carrier by railroad while engaging in [interstate or foreign] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce [where the injury resulted from negligence or defective equipment] . . . .

45 U.S.C. § 51.

Thus, there are three basic prerequisites to FELA liability. The defendant must, at the time of the plaintiff's injury, be (1) a common carrier, (2) employing the plaintiff, (3) in furtherance of interstate commerce. The absence of elements one (as to Rail Link) and two (as to GWI) formed the basis for the district court's summary judgment ruling in favor of the Defendants in this case.

### II. Summary Judgment for Rail Link

The district court's grant of summary judgment in favor of Rail Link was based on a finding that Ms. Smith had not produced evidence sufficient to raise a genuine issue of material fact as to whether Rail Link is a common carrier. Initially, we note that the text of the FELA statute does not say that the injured worker must be acting in furtherance of the employer's common carrier status when she is hurt in order for a cause of action to lie. Rather, the injured worker must simply be furthering the employer's engagement in interstate commerce. Congress could have limited the scope of FELA to cover only those injured employees who were furthering their employer's operations as a common carrier

5

when they were hurt.  Instead, however, Congress imposed liability on a whole class of companies through FELA, and only exempted claims by employees of common carriers who are hurt when doing something other than furthering interstate commerce — *not* those employees who are hurt when doing something other than furthering common carrier activities.  *See* 45 U.S.C. § 51.

Thus Rail Link's potential liability in this case turns not on whether Rail Link was acting as a common carrier at the Belle Ayre Mine where Ms. Smith was injured – Ms. Smith does not dispute that it was not so acting there – but instead depends on whether Rail Link was a common carrier at other facilities.  That Ms. Smith never worked at those facilities is of no moment.  An employer is a common carrier *everywhere* for FELA purposes if its operations — wherever executed — are those of a common carrier.  *See Mondou v. New York, New Haven & Hartford R.R. Co.*, 223 U.S. 1, 52 ("[T]he liability which [FELA] creates is imposed only on interstate carriers by railroad . . . and is imposed for the benefit of *all employees of such carriers* by railroad who are employed in interstate commerce, although some are not subjected to the peculiar hazards incident to the operation of trains . . . .") (emphasis added).

*A. The standard for determining whether an entity is a "common" carrier.*

Under FELA, a common carrier is "one who operates a railroad as a means of carrying for the public — that is to say, a railroad company acting as a common carrier." *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 187 (1920).  "[T]here exist a number of activities and facilities which, while used in conjunction with railroads and closely related

to railroading, are yet not railroading itself." *Edwards v. Pac. Fruit Express Co.*, 390 U.S. 538, 540 (1968). Other courts of appeal have formulated intricate tests to aid in the inquiry whether an entity is a common carrier under FELA. *See Lone Star Steel Co. v. McGee*, 380 F.2d 640, 647 (5th Cir. 1967) (establishing a four-part test to aid in answering the question whether an entity is a common carrier); *Kieronski v. Wyandotte Terminal R.R.*, 806 F.2d 107, 108 (6th Cir. 1986) (defining entities as private carriers, linking carriers, and in-plant operators and using that classification to determine whether an entity is a common carrier under FELA).

Our court has eschewed exclusive adoption of any such test and instead relies on a more fundamental inquiry: Does the defendant "operate[] a going railroad that carries for the public"? *Sullivan v. Scoular Grain Co.*, 930 F.2d 798, 800 (10th Cir. 1991). Rail Link certainly does not do this at the Belle Ayre Mine, where it has *one* contractual relationship with *one* client and is paid pursuant to a contractually negotiated formula. Ms. Smith does not argue to the contrary, and instead asks us to consider Rail Link's activities elsewhere in determining its common carrier status. But the only evidence on this point is that Rail Link provides management and oversight services at various railroad terminals. Oversight and management services necessarily implicate the existence of some underlying carrier whose operations are being overseen. The underlying company — the true carrier by rail — is the one which is subject to FELA

7

liability, not the company (Rail Link) which is called upon for advice and consultation in ensuring that the carrier's workers operate efficiently.[2]

### B. Rail Link's advertisement of its capabilities at other locations.

In addition to Ms. Smith's argument that Rail Link is a common carrier by virtue of its nationwide operations, she also argues that Rail Link is a common carrier as a result of the kind of services it holds itself out to the public as able to provide. In support of this position, Ms. Smith points to GWI's website, as well as filings with the Securities and Exchange Commission which state, *inter alia*, "As a common carrier by rail, we are required to transport hazardous materials, regardless of risk." Aplt. Br. at 22. But this evidence only shows what GWI does and does not reveal anything about Rail Link's operations.

---

[2] The record indicates that a local business journal reported that Rail Link "operates" at the Corpus Christi Terminal Railroad, Galveston Railroad, and Port of San Antonio. II Appx. 355. While we acknowledge that this is a scintilla of evidence that Rail Link actually operates as a common carrier, it cannot be squared with the overwhelming weight of evidence that Rail Link does not operate as a common carrier at *any* location, including the listed terminals and port. A mere scintilla of evidence will not suffice to allow a nonmoving party to survive summary judgment. *E.g., Lanman v. Johnson County*, 393 F.3d 1151, 1154-55 (10th Cir. 2004).

Ms. Smith also points out that Rail Link and GWI advertise Rail Link's control over common carriers. But as Ms. Smith herself notes, common carrier status is about what a company *actually* does, not what it *says* it does, whether in statements to investors or representations to the public on its website. While there is some allure to a rule — perhaps derived from principles of estoppel — that a company should be taken at its word when it boasts about its experience as a common carrier, the FELA statute requires us to look to what the company actually does in the field. Likewise, the fact that Rail Link is a corporate parent of common carriers (Commonwealth and Talleyrand) does not automatically implicate Rail Link as a common carrier.

Ms. Smith might succeed if she could show that this corporate structure was established as a means of evading FELA liability. *See* 45 U.S.C. § 55 ("Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void," subject to offsets for amounts paid by the shielded common carrier.). But Ms. Smith has made no effort at such a showing.

### C. Rail Link's contracts to provide rail support services to BNSF and other railroads.

Rail Link also has contracts under which it provides a host of other services at various sites around the country. For example, Rail Link inspects rail cars for Burlington Northern Santa Fe ("BNSF") to ensure that BNSF — undoubtedly a common carrier by rail — complies with federal railroading regulations. Ms. Smith points to these kinds of contracts (we will discuss only the BNSF contract for simplicity's sake) as a further

9

reason for us to find that Rail Link is a common carrier. As with Rail Link's oversight services at various locations around the country, the services provided under the BNSF contract do not make Rail Link a common carrier.

Under the BNSF contract, there is no relationship between Rail Link and any member of the public. Instead, Rail Link operates *only* at BNSF's pleasure. The contract does nothing to diminish or eliminate BNSF's status as a common carrier. If BNSF contracted with Rail Link to actually *run* BNSF's rail operations, there might be a stronger case that Rail Link is a common carrier. But FELA deals with precisely this scenario by voiding "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter." 45 U.S.C. § 55. Section 55 has no bearing on the BNSF-Rail Link contract, which affords no shield from liability. The company which does the vast majority of the work in providing rail services to the public (BNSF) bears potential FELA liability. The company which does technical work and has no interaction with the public (Rail Link) does not.

*D. Conclusions reached by other courts as to Rail Link's status.*

Our conclusion is consistent with those of various trial courts which have addressed the issue. *See Wolf v. Reliance Ins. Co.*, No. 99-CV-40-B, Summary Judgment Memorandum and Order, slip op. at 12-26 (D. Wyo. Jan. 3, 2000); *Erwin v. Rail Link, Inc.*, No. CIV-93-160-3, Order Granting Rail Link, Inc. Summary Judgment (Cir. Ct. Jefferson County, Ark., June 8, 1994); *Waters v. Rail Link, Inc.*, No. 91-26837, Order

10

Granting Defendant's Motion for Summary Judgment (D. Ct. Harris County, Tex., May 21, 1992).[3] While the decisions of these trial courts have no force under the doctrines of issue preclusion or *res judicata*, we find particularly persuasive the analysis by the federal district court in *Wolf*.

In *Wolf*, the parties made substantially the same arguments about Rail Link's common carrier status as the parties have made in this case. I Appx. at 79-91. The district court ruled that Rail Link was not a common carrier due to its activities at the site of an employee's injuries or its ownership of subsidiaries which operate short-line railroads. *Id*. Reasoning that Rail Link did not offer rail services to the general public at the site, the court concluded that Rail Link's private contracts to provide rail services at a chemical plant did not make it a common carrier. *Id.* at 78-86. The court also rejected the contention that Rail Link's ownership and control over subsidiaries which operate short-line railroads made it a common carrier, noting that such ownership was only relevant if there was some evidence that Rail Link's own operations were intertwined with those of its subsidiary railroads. *Id.* at 86-91.

We agree with both of these strands of analysis by the court in *Wolf*. And as we have explained above, we also conclude that Rail Link's oversight services around the country do not amount to operation of a railroad as contemplated by FELA. Accordingly, we affirm the district court's decision to grant summary judgment in favor of Rail Link.

### III. Summary Judgment for GWI

[3] Copies of these decisions and associated filings are also contained in the record on appeal. I Appx. 66-132.

11

## A. Procedural background.

Ms. Smith acknowledges that Rail Link employed her but asserts that GWI was *also* her employer under common law master-servant principles. On appeal, Ms. Smith relies on *Kelley v. Southern Pacific Co.*, 419 U.S. 318 (1974), in support of this theory. Specifically, she suggests that she was acting for two masters (GWI and Rail Link) simultaneously, or that she was a servant of Rail Link, which she says, was a servant of GWI. In Ms. Smith's complaint, she alleged that at the time of her injuries, she "was also working for the benefit of and subject to the control of Defendant [GWI], under its direction, supervision and control as a *de facto* employee of [GWI] and in furtherance of [GWI's] business in interstate commerce." I Appx. 13.

In Ms. Smith's memorandum opposing the Defendants' motion for summary judgment, she argued:

> On the issue of GWI as employer of Plaintiff, the paperwork is again critical. Plaintiff filled out all of her new hire paperwork with GWI. She completed her direct deposit form with GWI. She received and was tested on GWI safety rules and ethics rules. She had to acknowledge a different GWI rule of the day every day on the job. She was invited to participate in the GWI employee stock purchase program. She received direct deposits into her checking account from [Rail Link] and from GWI. She filled out insurance forms specifically listing GWI as employer. In fact, even the paperwork separating her from employment after the accident, specifically advising her of the termination of her life insurance coverage, came from GWI.

Dkt. 44, at 24-25.

The district court rejected Ms. Smith's argument.

## B. GWI's employment relationship with Ms. Smith.

12

Ms. Smith concedes that she was nominally employed by Rail Link, but asserts that GWI was *also* her employer as far as FELA is concerned. She argues that (1) she was simultaneously a servant for GWI and Rail Link; or (2) Rail Link was a servant of GWI under common law employment principles.

The Supreme Court has made it clear that FELA applies not only to "nominal" employers of an injured plaintiff, but also to "common-law" employers. *Kelley*, 419 U.S. at 324. FELA's requirement that a plaintiff's injury take place while employed by a common carrier compels the plaintiff to prove a master-servant relationship between the plaintiff and the defendant railroad. *Kelley*, 419 U.S. at 323. In FELA cases, "the question of employment, or master-servant status," is "determined by reference to common-law principles." *Id.* This test of employment "turns on the degree of control the [railroad] company exerts over the physical conduct of the worker in the performance of services." *Schmidt v. Burlington N. and Santa Fe Ry.*, 605 F.3d 686, 689 (9th Cir. 2010) (citing *Kelley*, 419 U.S. at 324). Thus Ms. Smith must prove that GWI controlled or had the right to control the physical conduct of Rail Link's employees at the site of the injury.

Ms. Smith presents the following evidence in an attempt to show that GWI actually controlled or had the right to control her physical conduct:

- GWI issues safety, ethics, and administrative rules which Rail Link employees are required to follow;

- GWI reviews and has the right to change all of Rail Link's budget submissions;

- GWI regularly issues employment correspondence to Rail Link employees;

13

- GWI advised Ms. Smith about her ineligibility for life insurance due to her time away from Rail Link;

- GWI sometimes made direct deposits of Ms. Smith's paycheck into her bank account;

- GWI listed itself as Ms. Smith's employer on group life insurance paperwork; and

- some of Rail Link's executive officers also hold executive positions with GWI.

Essentially, Ms. Smith contends that GWI has such substantial administrative control over Rail Link — control which is enabled by its corporate ownership — that it has the power to compel Rail Link employees to do whatever GWI pleases. For its part, GWI asserts that it "does not control the day-to-day operations of any of its subsidiaries" and that Ms. Smith "did not report to anyone at GWI." Aplee. Br. at 3, 7.

Ms. Smith has offered substantial evidence that GWI exercised control over administrative tasks. While this kind of administrative control *could* serve to enable physical control over employees, in this case Ms. Smith has not shown any connection between GWI's bearing of some administrative burdens of Rail Link and control over what Rail Link's employees actually do in the field on a day-to-day basis.

The closest Ms. Smith comes to succeeding in such a showing is the admission by a GWI executive officer, Andrew Chunko, that a Rail Link employee would follow his orders. This is not particularly probative, however, because Mr. Chunko is also an executive of Rail Link. Quite significantly, Mr. Chunko himself did not even know that he was an officer of GWI. Mr. Chunko's admission, then, only allows us to conclude that

14

a Rail Link employee would respond to the directive of a *Rail Link* executive officer who also holds a title with Rail Link's corporate parent, GWI.

In order to rule in Ms. Smith's favor, we would need to look not at whether GWI exercised physical control over Rail Link employees by GWI, but instead rely on administrative management by GWI. But under *Kelley*, we may not do so. Ms. Smith has offered no evidence to support an inference that GWI's control over administrative functions ever affected any physical conduct of Rail Link employees. For example, even accepting as true the allegation that safety guidelines were issued by GWI, as we must, there is no evidence that a violation of safety rules which happened to be promulgated by GWI would result in discipline by anyone other than Rail Link at Rail Link management's sole discretion.

The concept of employment under FELA is a broad one, but to show an employment relationship a plaintiff still must offer *some* evidence that physical conduct was or could have been controlled by an alleged employer. The record here is lacking in this regard, compelling a ruling in GWI's favor.[4]

---

[4] Because we conclude that GWI was not Ms. Smith's employer, we do not address her additional argument that GWI is a common carrier subject to FELA liability.

15

## IV. Subject-Matter Jurisdiction

Before concluding, we must confront a potential jurisdictional problem which presents itself in this case. Although neither party raised this concern below or on appeal, it relates to subject-matter jurisdiction, so we address it *sua sponte*.

Rail Link and GWI jointly moved for summary judgment in the district court. The district court granted their motion and entered final judgment in the Defendants' favor. However, if the plaintiff's status as an "employee" of a "common carrier" is a jurisdictional prerequisite to a FELA claim, the district court had no jurisdiction to enter a final judgment in this tort action, and the proper course would have been dismissal.

In *Sullivan v. Scoular Grain Co.*, 930 F.2d 798, 802-03 (10th Cir. 1991), we noted that federal question jurisdiction exists so long as the essential elements of an FELA claim — including the defendant's common carrier and employer status — are alleged. However, neither party disputed the threshold question of federal subject matter jurisdiction, and we accepted that view without meaningful discussion. Notably, we did not explicitly analyze the "subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy" (to borrow the terminology of the Supreme Court in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006)). In light of the absence of discussion on the jurisdictional question in *Sullivan*, and subsequent Supreme Court teachings on the point (*e.g.*, *Arbaugh*), we might question the precedential value of *Sullivan's* holding on this narrow question.

16

Nevertheless, because the FELA statute does not speak to these elements in jurisdictional terms, we see no reason to disturb the implicit conclusion reached in *Sullivan*.[5] *Accord Arbaugh*, 546 U.S. at 511 (directing federal courts to focus on provisions of a statute explicitly speaking in jurisdictional terms when distinguishing between essential ingredients of a claim and jurisdictional requirements).[6] Accordingly,

---

[5] Although the Supreme Court has not directly addressed this question, it has hinted that these elements are essential ingredients of a claim for relief under FELA rather than prerequisites to the exercise of federal question jurisdiction. *See CSX Transportation, Inc. v. McBride*, 131 S. Ct. 2630, 2644 (2011) (speaking to "limitations" — as opposed to jurisdictional barriers — on "who may sue, and for what" when referring to a defendant's common carrier and employer status).

The Court has suggested that the requirement that an employee be engaged in interstate commerce at the time of injury is a jurisdictional requirement. *See Reed v. Pennsylvania Rail Co.*, 351 U.S. 502, 508 (1956) (upholding district court's exercise of federal question jurisdiction over a FELA claim on the ground that the plaintiff's employment duties were in furtherance of interstate commerce operations of a defendant who was undisputedly a common carrier employer). But it is logical to distinguish the "interstate commerce" element from the "common carrier" and "employer" elements given that the former justifies Congress legislating in this field in the first place under the Constitution's Commerce Clause, while the latter are requirements that Congress *chose* to impose separate from establishing its power to legislate.

In this case, there is no dispute whether Ms. Smith was furthering interstate commerce when she was injured — she was facilitating the loading of coal that will eventually be distributed around the country.

[6] We recognize that holdings from other circuits suggest that these requirements *are* jurisdictional in nature. *See Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1346 (3d Cir. 1991) (affirming district court's dismissal for lack of subject-matter jurisdiction where the case was brought under FELA and the trial court concluded that the defendant was not the plaintiff's employer as a matter of law); *Mickler v. Nimishillen & Tuscarawas Railway Co.*, 13 F.3d 184 (6th Cir. 1993) ("The sole basis for federal jurisdiction in this case is FELA. Because defendant is not a common carrier and FELA does not apply, there is no federal question."); *Aho v. Erie Mining Co.*, 466 F.2d 539 (8th Cir. 1972) (affirming district court's determination that jurisdiction was lacking where defendant in a FELA action was not a common carrier).

(continued...)

consistent with *Sullivan*, we conclude that the district court had subject matter jurisdiction to hear this case, and thus had the power to enter final judgment.

*   *   *

In sum, the judgment entered by the district court is *AFFIRMED.*

---

[6](...continued)

While there is substantial authority from our sibling circuits suggesting a conclusion different from the one we reaffirm today, we think that *Sullivan's* holding better accords with the Supreme Court's most recent teachings on the difference between essential elements of a claim (which are not jurisdictional) and jurisdictional requirements.  Accordingly, we do not disturb it.

18