

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| MATHEW WAHL, | ) |
| | ) |
| Appellant, | ) |
| | ) WD77784 |
| v. | ) |
| | ) OPINION FILED: |
| | ) April 21, 2015 |
| WATCO COMPANIES, LLC, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division III:** Mark D. Pfeiffer, Presiding Judge, and
Gary D. Witt and Anthony Rex Gabbert, Judges

Mathew Wahl ("Wahl") brought an action under the Federal Employer's Liability Act, 45 U.S.C. §§ 51-60 ("FELA") against his employer, Watco Companies, LLC ("Watco"), for personal injuries. The Circuit Court of Cole County, Missouri ("trial court"), granted summary judgment to Watco, finding that it was not a common carrier by railroad. Wahl appeals. We affirm.

## Factual and Procedural History

Wahl brought suit against Watco under FELA for injuries he suffered on July 19, 2010, while working within the scope of his duties as a mechanic for Watco at the Watco railcar repair

facility located in Pittsburg, Kansas ("Pittsburg facility"). Wahl alleged that he was performing repairs on a covered hopper. He jacked the railroad car and began pushing the wheels under the car. As he was pushing the car, he felt a sudden and intense pain in his back and left leg. Wahl claimed that his injuries were caused by Watco's negligence in failing to provide him with a reasonably safe place to work. The essence of his claim is that his injury is compensable under FELA because Watco is a "common carrier by railroad" engaged in interstate commerce.

Watco moved for summary judgment on the grounds that it is not and was not at the time of the alleged incident a common carrier by railroad; therefore, Wahl could not state a cause of action against it under FELA.

The trial court granted summary judgment in favor of Watco and against Wahl, finding that there was no genuine issue of material fact that Watco was not a common carrier by railroad.

Wahl timely appeals.

## Standard of Review

The propriety of summary judgment is purely an issue of law, and appellate review is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered and accord the non-movant the benefit of all reasonable inferences from the record. *Id.* We do not defer to the trial court's order granting summary judgment. *Id.*

"The purpose of summary judgment under Missouri's fact-pleading regime is to identify cases[:]  (1) in which there is no genuine dispute as to the facts[;] and (2) the facts as admitted show a legal right to judgment for the movant." *Id.* at 380.  Facts in support of a party's summary judgment motion, set forth by affidavit or otherwise, are taken as true, unless the non-moving party's response contradicts them. *Id.* at 376.  "The key to summary judgment is the

undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380.

"Where a 'defending party' will not bear the burden of persuasion at trial, that party need not controvert *each* element of the non-movant's claim in order to establish a right to summary judgment." *Id.* at 381. "Rather, a 'defending party' may establish a right to judgment by showing . . . facts that negate *any one* of the claimant's elements . . . ." *Id.*

To defeat a properly pleaded summary judgment motion, the non-movant must show that there is a genuine dispute as to the facts underlying the movant's right to judgment. *Id.* at 382. "[A] 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.*

**Analysis**

The trial court's grant of summary judgment in favor of Watco was based on a finding that Wahl had not produced sufficient evidence to raise a genuine issue of material fact as to whether Watco was a common carrier by railroad. "Unlike a typical workers' compensation scheme, which provides relief without regard to fault, FELA provides a statutory cause of action sounding in negligence[.]" *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165, 127 S.Ct. 799, 805, 166 L.Ed.2d 638 (2007). FELA states that:

> Every common carrier by railroad while engaging in [interstate or foreign] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. "FELA provides for concurrent jurisdiction of the state and federal courts, § 56, although substantively FELA actions are governed by federal law." *Norfolk*, 549 U.S. at 165. "Absent express language to the contrary, the elements of a FELA claim are determined by

3

reference to the common law." *Id.* at 165-66. To recover under FELA, a plaintiff must prove: (1) he was injured while in the scope of his employment; (2) his employment was in furtherance of a common carrier by railroad's interstate transportation business; (3) the railroad, his employer, was negligent; and (4) the railroad's negligence played some part in causing the injury for which damages are sought. *Burrus v. Norfolk & W. Ry. Co.*, 977 S.W.2d 39, 43 (Mo. App. E.D. 1998). The absence of proof of element two formed the basis for the trial court's summary judgment ruling in favor of Watco.

"FELA does not apply to all railroad enterprises: it specifically provides liability for 'common carrier[s] by railroad engaged in interstate commerce.'" *Luman v. ITS Techs. & Logistics, LLC*, 323 S.W.3d 821, 825 (Mo. App. W.D. 2010) (quoting *Edwards v. Pac. Fruit Express Co.*, 390 U.S. 538, 538-39, 88 S.Ct. 1239, 20 L.Ed.2d 112 (1968); 45 U.S.C. § 51). Since FELA does not specifically define the term "common carrier," the Supreme Court has held that the words "'common carrier by railroad' mean 'one who operates a railroad as a means of carrying for the public—that is to say, a railroad company acting as a common carrier. This view not only is in accord with the ordinary acceptation of the words, but is enforced by the mention of cars, engines, track, roadbed and other property pertaining to a going railroad.'" *Edwards*, 390 U.S. at 540 (quoting *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 187-88, 41 S.Ct. 93, 98, 65 L.Ed. 205 (1920)). Similarly, a common carrier has been defined as:

> one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant.

*Kelly v. Gen. Electric Co.*, 110 F.Supp. 4, 6 (E.D.Pa.), *aff'd*, 204 F.2d 692 (3d Cir.), *cert. denied*, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953).

In *Edwards,* the Court cautioned that "there exist a number of activities and facilities which, while used in conjunction with railroads and closely related to railroading, are yet not railroading itself." *Edwards*, 390 U.S. at 540. The *Edwards* Court observed that Congress, although having the opportunity to do so, had refused to broaden the meaning of railroads and had specifically declined to "extend the coverage of [FELA] to activities and facilities intimately associated with the business of common carrier by railroad." *Id.* at 541.

Three federal circuits have created rubrics by which to determine whether an entity is a common carrier by railroad under FELA. In *Lone Star Steel Company v. McGee*, the Fifth Circuit identified four considerations that it considered were "of prime importance in determining whether a particular entity is a common carrier":

> First—actual performance of rail service, second—the service being performed is part of the total rail service contracted for by a member of the public, third—the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public, and fourth—remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad.

380 F.2d 640, 647 (5th Cir. 1967). The Sixth Circuit has rejected application of the *Lone Star* considerations as a "test" and, instead, divides carriers into categories (in-plant facility, private carrier, linking carrier, and common carrier by virtue of relationship with a common carrier) to determine whether a carrier is a "common carrier." *Kieronski v. Wyandotte Terminal R.R. Co.*, 806 F.2d 107, 108-09 (6th Cir. 1986). The Tenth Circuit "has eschewed exclusive adoption of any such test and instead relies on a more fundamental inquiry: Does the defendant operate[ ] a going railroad that carries for the public?" *Smith v. Rail Link, Inc.*, 697 F.3d 1304, 1308 (10th Cir. 2012) (internal quotation omitted).

5

Of these analysis rubrics, this court has previously endorsed use of the *Lone Star* factors. *Luman*, 323 S.W.3d at 826-27. That said, although the question of whether FELA applies to Watco is a question of law, we have emphasized that "whether an entity is a common carrier depends upon *what it does*." *Id.* at 826 (internal quotation omitted) (emphasis added).

Wahl argues that Watco is a common carrier by railroad because it is part of an integrated corporate family that includes common carriers by railroad, and it constitutes a necessary link to those carriers. He argues that Watco serves as a necessary link to South Kansas & Oklahoma Lines Railroad ("SKOL"), an entity within the Transportation Group of Watco, Inc., by servicing SKOL railcars so that SKOL can continue to operate as a railroad. Wahl also contends that Watco serves as a necessary link between SKOL and other railroads because SKOL derives business from delivering customers' railcars to Watco for repair and then returning the repaired railcars to the customers. We examine the facts of Watco's business activities in the light most favorable to Wahl, according him the benefit of all reasonable inferences.

The undisputed facts establish the following: Watco, Inc. is the parent ownership group that owns or has an ownership interest in affiliated entities, including Watco and other mechanical service entities in the Watco Mechanical Services Group, and transportation entities in the Watco Transportation Services Group. While there may be overlap among the affiliated entities at the level of corporate *ownership*, there is not overlap at the level of managerial *operation*. Watco, Inc. and Watco use the same administrators and carriers for 401(k) and insurance. The separately incorporated railroads in the Transportation Services Group do not have the same 401(k) and pension plans as Watco. The Transportation Services Group is governed by the labor laws of the Railroad Retirement Board, whereas the Mechanical Services Group is not. The company website, watcocompanies.com, is the web address for all affiliated

6

entities, with the website breaking down information by topics, such as switching services or railroads.

Watco owns and operates the Pittsburg facility, a railcar repair shop in Pittsburg, Kansas. At the time of Wahl's alleged injury, he was employed by Watco. On or about July 19, 2010, while Wahl was working within the scope of his duties as a mechanic for Watco, Wahl was injured at the Pittsburg facility, allegedly due to Watco's failure to provide him with a safe place to work.

Multiple customers from all over the United States send railcars to be repaired and serviced by Watco at the Pittsburg facility. *Occasionally, though not principally*, the Pittsburg facility does some work on railcars owned and operated by Watco-affiliated, but separately incorporated, railroads. However, the *majority* of Watco's work is for *private railcar owners*, such as leasing companies. All repairs are written up, arranged for, and invoiced the same way, whether they are railcars belonging to a Watco-affiliated railroad, railcars belonging to any other railroad, or privately owned railcars. Watco is paid on a case-by-case basis for the railcar repairs. The tracks within the Pittsburg facility are owned by Watco. The switch engine Watco uses to move railcars around the plant is owned by Watco and operated by Watco employees and never leaves the Pittsburg facility.

Railcars are brought to the Pittsburg facility by SKOL. Watco, Inc. owns or has an ownership interest in SKOL. SKOL is part of Watco, Inc.'s Transportation Services Division, which is the division of all railroad track ownership. SKOL is not managed or operated by Watco. SKOL owns and operates the engines it uses to deliver railcars to the Pittsburg facility. SKOL-owned railroad tracks end where the industrial lead tracks start at the Pittsburg facility. SKOL delivers railcars to be repaired along its long main track, which ends at the Pittsburg

7

facility, at which point SKOL comes onto Watco property to "cut loose" the railcars and then leave. After the railcars are repaired or serviced, SKOL removes them from the Pittsburg facility for delivery to the customer.

In *Luman*, this court evaluated whether a suit was properly brought under FELA using the factors enumerated in *Lone Star*. *Luman*, 323 S.W.3d at 826-27. The *Lone Star* factors applied to the facts of this case are:

- *Actual performance of rail service.* Watco does not hold itself out to the public as providing rail service for hire and does not perform interstate rail transportation. It operates railcar repair shops, including the Pittsburg facility.

- *Service being performed is part of the total rail service contracted for by a member of the public.* Railcars owned by other entities are brought to the Pittsburg facility by SKOL, using SKOL employees, tracks, and engines. While at the Pittsburg facility, the railcars are moved by Watco employees by an engine that never leaves the facility on tracks owned by Watco. The repair and servicing of railcars at the Pittsburg facility is not performed as part of any total rail service contracted for by a member of the public.

- *Entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public.* Watco does not link two common carriers. Watco moves the railcars to be repaired within the Pittsburg facility on Watco's own industrial lead tracks and does not operate over SKOL tracks. It does not perform as part of a system of interstate rail transportation, and it is not an integral link in SKOL's or any other railroad's total rail operation. Watco is a legally separate business entity. Nothing in the record establishes that there is active

8

management uniting the Transportation Service Group railroads and Watco into an organized system whose operations are highly integrated and mutually dependent. Rather, while there may be overlap among the affiliated entities at the level of corporate *ownership*, there is no overlap at the level of managerial *operation*.

- *Remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad.* Watco directly invoices its repair customers, regardless of whether the customer is a Watco, Inc. affiliated railroad, an unaffiliated railroad, or a privately owned company. And, the vast majority of such invoiced work is performed for entities that are *not* Watco-affiliated entities. Further, Watco does not receive a fixed charge or a percentage of the profits from a railroad.

We conclude that, under these facts, Watco is not a common carrier by railroad engaged in interstate commerce and, therefore, is not subject to FELA. FELA liability extends only to injuries suffered by a person while employed by a common carrier by railroad while engaged in interstate commerce. 45 U.S.C. § 51. After considering the circumstances of Watco's operation in light of *Lone Star*, we are convinced that there is no genuine issue of material fact as to whether Watco is a "common carrier by railroad," as contemplated by 45 U.S.C. § 51. Watco does not perform rail services for the public and is not a railroad company acting as a common carrier in interstate commerce. The work it performs in repairing and servicing railcars is not a "necessary link" to the common carrier operations of the railroads with which it contracts.[1]

---

[1] Wahl cites to *O'Brien v. Watco Contract Switching Inc.*, 802 N.E.2d 999 (Ind. Ct. App. 2004). While a decision from a foreign jurisdiction is not binding upon this court, *see Deane v. Mo. Emp'rs Mut. Ins. Co.*, 437 S.W.3d 321, 326 n.5 (Mo. App. W.D. 2014), we likewise find that the *O'Brien* precedent is not helpful to Wahl. In *O'Brien*, the facts related to an intra-plant railroad switching service providing services to an unrelated manufacturing facility. *O'Brien*, 802 N.E.2d at 1001. The switching service was one of several entities either individually or collectively owned by a family-owned corporation. *Id.* The *O'Brien* court looked to the specific operation in question—in-plant rail switching—rather than to corporate form to determine whether an entity is a

Likewise, unlike the facts of *Luman*, there are no facts here suggesting that Watco and SKOL were "actively managing and uniting" their entities into an "organized system," nor that Watco undertook any obligations of SKOL as a common carrier. *Luman*, 323 S.W.3d at 827. Thus, we decline to broaden the meaning of railroads and to extend the coverage of FELA to "activities and facilities which, while used in conjunction with railroads and closely related to railroading, are yet not railroading itself." *Edwards*, 390 U.S. at 540.

Point I is denied.

## Conclusion

The trial court's judgment is affirmed.

Mark D. Pfeiffer, Presiding Judge

Gary D. Witt and Anthony Rex Gabbert, Judges, concur.

---

common carrier for purposes of FELA. *Id.* at 1006. The court found no evidence linking the railroad switching service of the affiliate to the common carrier services of any other affiliate, instead concluding that "even though a company may be considered a 'railroad' if it is part of an integrated corporate family that includes common carriers by railroad and if it constitutes a *necessary link* to those carriers, there is no 'necessary link' here." *Id.* at 1008 (internal quotation omitted). Likewise, we conclude that Watco's services at the Pittsburg facility were not a "necessary link" to the common carrier services of SKOL.